J-A28033-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| EDMUND L. HAENIG | |
| Appellant | No. 2269 EDA 2013 |

Appeal from the Order July 15, 2013
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-CR-0000743-1996

BEFORE:  GANTMAN, P.J., WECHT, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                **FILED NOVEMBER 07, 2014**

This is an appeal from an order denying Edmund Haenig's motion to declare certain provisions of the Sexual Offender Registration and Notification Act ("SORNA")[1] unconstitutional.  Although Haenig's circumstances are unfortunate, we are constrained to affirm.

In August 1996, Haenig pled guilty to two counts of corrupting the morals of a minor ("corruption of minors")[2], a first degree misdemeanor, and one count of indecent assault without consent[3], a second degree misdemeanor, based on crimes that he committed on December 31, 1993. The court imposed consecutive sentences of 1½-5 years' imprisonment on

_____

[1] 42 Pa.C.S. § 9799 *et seq*.
[2] 18 Pa.C.S.A. 6301(a).
[3] 18 Pa.C.S.A. 3126(a)(1).

each count of corruption of minors plus a consecutive term of 6 months–2 years' imprisonment for indecent assault, a total of 3½-12 years' imprisonment. At the time Haenig pled guilty, there was no sexual offender registration requirement for corruption of minors or indecent assault[4].

In May 2007, Haenig pled nolo contendere in Florida to a misdemeanor charge of disorderly conduct and was sentenced to 60 days of incarceration. Due to this conviction, on August 30, 2007, the Pennsylvania Board of Probation and Parole found him in violation of parole in his 1996 case and sentenced him to nine months' imprisonment. He was subsequently released, but his maximum parole date was extended to August 25, 2016.

In December 2011, the legislature enacted SORNA, which became effective in December 2012. Pursuant to SORNA, certain individuals under the Parole Board's supervision must register as sexual offenders. 42 Pa.C.S. § 9799.13(2). Moreover, SORNA provides that individuals convicted of, *inter alia*, indecent assault and one form of corruption of minors[5] must register as sexual offenders. 42 Pa.C.S. 9799.14.

_____

[4] ***See*** 42 Pa.C.S. § 9793 (enacted October 24, 1995 and repealed effective July 9, 2000).

[5] An individual convicted of corruption of minors under 18 Pa.C.S. § 6301(a)(1)(ii) must register as a sexual offender. 42 Pa.C.S. § 9799.14. Individuals convicted under other subsections of section 6301 are not required to register. ***Id***. Haenig asserts that SORNA does not apply to his convictions under section 6301. Neither the trial court nor the

*(Footnote Continued Next Page)*

Near the end of 2012, sixteen years after sentencing, Haenig's parole officer informed him that SORNA required him to register as a sex offender. Haenig filed a motion to declare SORNA unconstitutional, which the court denied after oral argument. Haenig filed a timely appeal and timely Pa.R.A.P. 1925(b) statement contending that SORNA is unconstitutional under (1) the Ex Post Facto Clause of the Pennsylvania Constitution[6], (2) the Due Process Clause of the United States Constitution, and (3) the separation of powers doctrine embodied in the Pennsylvania Constitution. These arguments involve questions of law for which our standard of review is plenary. **Commonwealth v. Orie**, 88 A.3d 983, 1020 (Pa.Super.2014).

Building upon this Court's recent decision in **Commonwealth v. Perez**, 97 A.3d 747 (Pa.Super.2014), as well as decisions cited in **Perez**, we find no merit in Haenig's ex post facto argument.

In **Perez**, as in the present case, the defendant committed the offense of indecent assault prior to SORNA's enactment. At the time of his offense, the version of Megan's Law then in effect required him to register as a sex offender for 10 years. Under SORNA, which went into effect several months

---

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯

Commonwealth disputes this assertion; nor is it germane to the issues of constitutionality raised in this appeal. Therefore, we will assume, without deciding, that Haenig's convictions under section 6301 are not subject to SORNA.

[6] Haenig does not contend that SORNA is unconstitutional under the Ex Post Facto Clause of the United States Constitution.

before he plead guilty to indecent assault, his registration period increased to 25 years. The defendant filed a motion to declare SORNA unconstitutional on the ground that the Ex Post Facto Clauses in the federal and state constitutions prohibited retroactive application of the 25-year registration requirement to him. The trial court denied his motion and ordered him to register as a sex offender for the next 25 years. *Perez*, 97 A.3d at 749.

This Court affirmed. We held, after extensive analysis, that SORNA does not constitute "punishment" under the multi-factor test articulated in *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), and therefore was valid under the Ex Post Facto Clause of the United States Constitution. *Id*. at 750-59. Most of the *Kennedy* factors, we reasoned, weighed against finding SORNA punitive. We stated: (1) registration requirements historically are not regarded as punishment, because individuals subject to SORNA could live and work where they wished, without supervision; (2) SORNA did not come into play only on a finding of scienter; (3) although SORNA carries some element of retribution for past conduct, it primarily is regulatory, in that its goal is to reduce future misconduct (recidivism); (4) SORNA was rationally related to an alternative purpose other than punishment, namely the Commonwealth's interest in preventing crimes of a sexual nature; and (5) it is reasonable to impose particular regulatory consequences to individuals convicted of specified crimes. *Id*. On the other hand, we acknowledged that one factor weighed

in favor of finding SORNA punitive: it imposed an affirmative restraint by requiring the defendant to appear 50 times over the next 25 years for in-person verifications of his personal information. *Id*. at 752-54. This single factor, however, did not render SORNA punitive, since

> the restraint is relatively minor when balanced against the remaining factors. . .[T]he greater restraints imposed by sex offender registration stem from the public's benefit of said registration and the consequences that flow therefrom. . .[T]hose effects, while not insignificant, are merely secondary and collateral to the requirements themselves.

*Id*. at 758-59.

Next, *Perez* rejected the defendant's ex post facto claim under the Pennsylvania Constitution:

> Article I, Section 17 of the Pennsylvania Constitution states that '[n]o *ex post facto* law, nor any law impairing the obligation of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed.' Pa. Const. Art. I, § 17. This Court has recently held that 'the standards applied to determine an *ex post facto* violation under the Pennsylvania Constitution and the United States Constitution are comparable.' **Commonwealth v. Rose***, 81 A.3d 123, 127 (Pa.Super.2013) (*en banc*). Our Supreme Court has previously declined to hold that the *Ex Post Facto* Clause of the Pennsylvania Constitution imposes greater protections than Article I, Section 10 of the Federal Constitution. *See* **Commonwealth v. Gaffney***, 557 Pa. 327, 733 A.2d 616, 622 (1999) (stating that Gaffney 'failed to present any compelling reason for our departure from the standards appropriate for determining whether an *ex post facto* violation pursuant to the federal constitution has occurred and we find no independent reasons for doing so[ ]').

It is axiomatic that when presenting a claim for higher protections under the Pennsylvania Constitution, the Appellant must discuss the following four factors:

1) text of the Pennsylvania constitutional provision;
2) history of the provision, including Pennsylvania case-law;
3) related case-law from other states;
4) policy considerations, including unique issues of state and local concern, and applicability within modern Pennsylvania jurisprudence.

***Commonwealth v. Edmunds***, 526 Pa. 374, 586 A.2d 887, 895 (1991). The ***Edmunds*** analysis is mandatory and a failure to provide it precludes the consideration of a state constitutional claim independent of its federal counterpart. ***See***, ***e.g.***, ***Commonwealth v. Baker***, 621 Pa. 401, 78 A.3d 1044, 1048 (2013) (concluding that Baker's failure to provide an ***Edmunds*** analysis precluded considering whether Article I, Section 13 of the Pennsylvania Constitution provided higher protections that the Eighth Amendment of the Federal Constitution on cruel and unusual punishments). . .Here, Appellant's brief does not include the required ***Edmunds*** analysis to consider whether under this specific statute, the Pennsylvania Constitution would provide higher ***ex post facto*** protections than Article I, Section 10 of the Federal Constitution. . .Because we have already resolved his federal *ex post facto* claim using framework promulgated by the United States Supreme Court, and Appellant does not argue that the Pennsylvania Constitution provides higher protection, his claim under the Pennsylvania Constitution likewise fails.

***Id***. at 759-60.

Since the appellant in ***Perez*** failed to provide the required ***Edmunds***

analysis, ***Perez*** did not reach the issue of whether SORNA is unconstitutional

under an *Edmunds* analysis. In this case, Haenig's brief is rather loosely organized, but he does manage to address all four parts of the *Edmunds* test. Therefore, we reach the merits of Haenig's argument that SORNA is unconstitutional under Pennsylvania's Ex Post Facto Clause.

*Edmunds'* first two steps require analysis of the relevant language of the Pennsylvania Constitution and the history of this text. In *Rose*, *supra*, this Court analyzed the language and history of Pennsylvania's Ex Post Facto Clause as follows:

> Article I, Section 17 of the Pennsylvania Constitution is Pennsylvania's *ex post facto* clause. The prohibition against *ex post facto* laws has been part of Pennsylvania's Constitution since 1790. The clause reads, 'No ex post facto law, nor any law impairing the obligation of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed.' Pa. Const. Art. I, § 17. Similarly, the federal constitution provides that 'No State shall ... pass any Bill of Attainder, ex post facto Law, or Law impairing the obligation of contracts....' U.S. Const. Article I, § 10. Our Supreme Court has opined that the 'same pre-revolutionary-war concerns shaped the ex post facto provision of the constitutions of Pennsylvania and the United States.' *Commonwealth v. Gaffney*, 557 Pa. 327, 733 A.2d 616, 621 (1999). Accordingly, 'the standards applied to determine an ex post facto violation under the Pennsylvania Constitution and the United States Constitution are comparable.' *Commonwealth v. Young*, 536 Pa. 57, 637 A.2d 1313, 1317 n. 7 (1993); *Commonwealth v. Allshouse*, 614 Pa. 229, 36 A.3d 163, 184 (2012).

*Id*., 81 A.3d at 127. Since the text and history of Pennsylvania's Ex Post Facto Clause is much the same as the federal Ex Post Facto Clause, these factors do not counsel in favor of providing greater protection to defendants under Pennsylvania's Ex Post Facto Clause.

The third ***Edmunds*** prong requires us to address ex post facto decisions from other states. We recognize, as did ***Perez***, that several other jurisdictions have held that retroactive application of their own SORNA statutes violates the federal and/or state Ex Post Facto Clauses. ***See Doe v. State***, 189 P.3d 999, 1018 (Alaska 2008); ***Wallace v. State***, 905 N.E.2d 371, 384 (Ind.2009); ***State v. Letalien***, 985 A.2d 4, 24 (Me.2009); ***Doe v. Dep't of Pub. Safety and Corr. Servs.***, 430 Md. 535, 62 A.3d 123, 139 (2013); ***State v. Williams***, 129 Ohio St.3d 344, 952 N.E.2d 1108, 1113 (2011); ***Starkey v. Dep't of Corr.***, 305 P.3d 1004, 1030 (Okla.2013). These courts, however, applied the ***Kennedy*** factors to their own SORNA statutes in a vastly different manner than ***Perez*** applied them to Pennsylvania's version of SORNA. ***See, e.g., Wallace***, ***supra*** (concluding that six of seven ***Kennedy*** factors weighed in favor of finding Indiana's SORNA statute punitive). Since we are bound by ***Perez***'s analysis of the ***Kennedy*** factors, the opinions from other jurisdictions on this subject are only of academic interest.

The fourth and final ***Edmunds*** prong requires assessment of policy considerations that bear upon the question of SORNA's constitutionality.

Haenig's discussion of policy considerations boils down to editorial remarks about the **Kennedy** factors that fly in the face of this Court's conclusions in **Perez**. For example, Haenig argues that SORNA's effects are "retribution and deterrence". Brief For Appellant, p. 24. **Perez**, however, holds that SORNA's primary purpose is regulatory. **Perez**, 97 A.3d at 756. At another point, while acknowledging that SORNA has a rational purpose of protecting citizens from repeat sexual offenders, Haenig argues that SORNA is overly punitive because of its tendency to shame sexual offenders by placing their names on the Internet and to ruin their employment and residency prospects. Brief For Appellant, p. 25. **Perez** holds, however, that SORNA is not overly punitive, because it is "rationally connected to the Commonwealth's compelling interest in seeking to prevent crimes of a sexual nature." **Perez**, 97 A.3d at 757. Finally, Haenig argues that SORNA's measures are "excessive", Brief For Appellant, p. 26, but **Perez** holds that SORNA is not excessive in effectuating its non-punitive objective of reducing recidivism. **Perez**, 97 A.3d at 757-58. In short, we do not find Haenig's discussion of policy considerations persuasive, since Haenig repeatedly contradicts **Perez's** analysis of the **Kennedy** factors.

Having reviewed all four **Edmunds** factors, we conclude that none of them weigh in favor of finding SORNA unconstitutional under Pennsylvania's Ex Post Facto Clause. Thus, Haenig's first argument on appeal is devoid of merit.

Haenig's second argument in this appeal is that SORNA violates his procedural due process rights. We disagree.

Haenig admits that his procedural due process claim rises or falls on whether SORNA is primarily punitive in nature. Brief For Appellant, pp. 36-37. Since *Perez* clearly holds that SORNA is non-punitive, Haenig's due process argument collapses[7].

In his third and final argument, Haenig contends that SORNA violates the separation of powers doctrine embodied in the Pennsylvania Constitution, because the legislature interfered in SORNA with the judiciary's power to sentence defendants. As *Perez* suggests, SORNA is not a condition of sentence but is a non-punitive measure that is collateral to the

_____

[7] Haenig's due process argument refers to *Commonwealth v. Hainesworth*, 82 A.3d 444 (Pa.Super.2013) (en banc). *Hainesworth* held that the defendant is not required to register as a sex offender when the Commonwealth makes an explicit promise in a plea agreement that the defendant need not register. *Hainesworth* does not apply if there is no mention in the plea agreement as to whether Megan's Law requirements apply. The certified record does not include the notes of testimony from Haenig's guilty plea or sentencing hearings, so we cannot tell what, if anything, was said about Megan's Law. Consequently, Haenig has waived his *Hainesworth* argument. *Commonwealth v. Hallock*, 722 A.2d 180, 182 (Pa.Super.1999) (it was defendant's responsibility to supply Superior Court with complete record for purposes of defendant's appeal, and court could not consider any information which was not contained in certified record); *see generally* Pa.R.A.P. 1911, 1921, 1922 (requirements for composition of record on appeal and inclusion of transcripts in record). Furthermore, we doubt that anyone mentioned Megan's Law during Haenig's guilty plea or sentencing hearings, since Megan's Law did not apply to indecent assault or corruption of minors in 1996.

defendant's sentence. Thus, SORNA does not impede the judiciary's power of sentencing.

We understand Haenig's chagrin at having to register as a sex offender even though sixteen years elapsed between the date of sentencing and the date he received notice of his requirement to register. Nevertheless, we find that the trial court's order denying his constitutional challenges is correct under the law.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/7/2014